UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

ROSALIND GANNAWAY

                                     Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER PETER
ZOELLER #14842, POLICE OFFICER JOSEPH
PONTECORVO #10488, AND JOHN DOE #1-2
                                     Defendants.

**COMPLAINT AND JURY DEMAND**

MATSUMOTO, J.

POLLAK, M.J

---------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of her rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a August 9, 2012 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, assault, battery, false arrest, and excessive force.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiff's state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Eastern District of New

York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiff is a citizen of the United States and at all times here relevant resided in Kings County, City and State of New York.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. Police Officer Peter Zoeller was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Zoeller was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause. Officer Zoeller is sued in his individual capacity.

10. Police Officer Joseph Pontecorvo was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Pontecorvo was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause. Officer Pontecorvo is sued in his individual capacity.

11. All other individual defendants ("the officers"), including John Doe #1-2, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

12. At all times here mentioned defendants were acting under color of state law, to wit,

under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. On August 9, 2012, plaintiff was at the home of a patient she cares for as a home health aide. At approximately 1:30AM, plaintiff received a frightening phone call from her neighbor that plaintiff's son had been shot several times outside their home. Plaintiff quickly made arrangements for her patient and rushed home.

15. When she arrived outside her home, there were several police vehicles and many police officers. Her son had already been removed from the scene and taken to the hospital. Upon learning plaintiff's identity, the officers took plaintiff into the home and questioned her for approximately one hour. During that interrogation, plaintiff learned that her son was alive but had been shot several times.

16. Eventually, the officers left her home except for one uniformed officer who remained outside. Plaintiff walked out of her home to go the hospital when she noticed her son's bag was still lying on the sidewalk near her garbage cans. Plaintiff asked the officer left at the scene if she could take the bag; there were personal items inside that she didn't want to disappear. The officer told her to wait. Approximately 30 minutes later, plaintiff again asked the officer if she could take the bag, considering that the yellow tape had been taken down and people were allowed to walk freely in the vicinity of the bag. Plaintiff explained that she would simply place

3

the bag inside her home. The officer took plaintiff's name and date of birth and plaintiff left to finally get to her son at Brookdale Hospital.

17. When plaintiff arrived at Brookdale, several officers were outside her son's room. Plaintiff went inside and was able to sit with her son, who had a shattered collarbone and a damaged lung. At approximately 6:30AM, plaintiff walked out of the trauma room and was approached by several officers. The officers said they needed to talk to her and led her out the back exit of the hospital near the ambulance ramp.

18. Once outside, the officer told plaintiff she was under arrest. Plaintiff became extremely upset and frightened. She was grabbed by several of the officers, handcuffed and pulled into a police car. The police car drove away from the hospital and stopped again a few blocks away. Plaintiff was taken out of the car, pushed onto the trunk and searched. The officers emptied her pockets, and searched through her wallet. No illegal contraband or weapons were recovered.

19. Plaintiff was taken to the precinct, searched again and chained to a bench. She was taken back to Brookdale to receive treatment for her injuries which included bruising and swelling on her body. Eventually, plaintiff was released from the precinct with a Desk Appearance Ticket. The Kings County District Attorney declined to prosecute the case and all charges have been sealed.

20. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story

4

and falsely charge plaintiff with offenses, to justify the injuries.

21. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

22. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of her rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

   b. Violation of her right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

   c. Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d. Violation of her New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

   e. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   f. Loss of liberty;

   g. Physical pain and suffering;

   h. Economic loss.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

23. The above paragraphs are here incorporated by reference.

24. Defendants acted under color of law and conspired to deprive plaintiff of her civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due

process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

25. Defendants falsely arrested plaintiff, used excessive force against plaintiff, and failed to intervene in each other's obviously illegal actions.

26. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL LIABILITY)

27. The above paragraphs are here incorporated by reference.

28. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

29. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

30. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of

6

their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

31. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

32. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

33. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department

7

from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

34. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

35. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

## THIRD CAUSE OF ACTION
(ASSAULT)

36. The above paragraphs are here incorporated by reference.

37. Defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and offensive touching.

38. Plaintiff was damaged by defendants' assault.

## FOURTH CAUSE OF ACTION
(BATTERY)

39. The above paragraphs are here incorporated by reference.

40. Defendants engaged in and subjected plaintiff to immediate harmful and offensive touching and battered her.

8

41. Plaintiff was damaged by defendants' battery.

## FIFTH CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

42. The above paragraphs are here incorporated by reference.

43. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

44. Defendants intended to confine plaintiff.

45. Plaintiff was conscious of the confinement and did not consent to it.

46. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

## SIXTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

47. All preceding paragraphs are here incorporated by reference.

48. Defendants, acting under color of law, violated plaintiff's rights pursuant to §§6 and 12 of the New York State Constitution.

49. A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## SEVENTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

50. The preceding paragraphs are here incorporated by reference.

51. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

52. As a result of defendants' tortious conduct in the course of their employment and in

furtherance of the business of defendant City of New York, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: Brooklyn, New York
October 9, 2013

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Police Officer Peter Zoeller
Medical Division
59-17 Junction Blvd Fl.15
Corona, NY 11368

Police Officer Joseph Pontecorvo
PSA2
560 Sutter Avenue
Brooklyn, NY 11207

Very truly yours,

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave.
Brooklyn, NY 11217
(718) 852-3710 x103